## PEARCE, et ux v. HOWARD JOHNSON, Inc.

Circuit Court, Pinellas County.

June 14, 1960.

Thomas Alexander, MacFarlane, Ferguson, Allison & Kelly, Tampa, for plaintiffs.

T. Frank Hobson, Jr., St. Petersburg, and Frank D. Hall of Hall & Hedrick, Miami, for defendant.

ORVIL L. DAYTON, Jr., Circuit Judge.

This is a suit for a declaratory decree and comes before the court upon a stipulation of facts. It is stipulated that the plaintiffs, Eugene L. Pearce, Jr. and Anne Woolsey Pearce, are desirous of and have been attempting to negotiate a sale or tax free exchange of the property described in the complaint, excluding the portion thereof specifically described in the lease between the plaintiffs and the defendant, Howard Johnson, Inc. of Florida.

It is further stipulated that the plaintiffs would not retain any interest, beneficial or otherwise, in the property when sold or exchanged, other than the possibility of being required to take a purchase money mortgage thereon to secure the balance of the purchase price. It is further stipulated that the defendant, Howard Johnson, Inc. engages in the restaurant business, the sale of ice cream, and has numerous motels or motor lodges throughout the state of Florida, but presently is not engaged in business on the demised premises and that the stated businesses in which the defendant engages in the state are the primary businesses of the defendant and that the defendant has large sums of money invested in said businesses.

The plaintiffs have requested that the question of the legal effect of the language of paragraph 12 of their lease with Howard Johnson, Inc. be judicially determined by the court. Paragraph 12 of the lease reads as follows —

"Covenants Against Competition: The Lessors covenant that unless and until the Lessee shall consent in writing, the Lessors will not at anytime during the term hereof, *knowingly* let or permit any part of the NE¼ of the SE¼ of Section 18, Township 29 South, Range 16 East, owned by the Lessors, to be used or occupied as and for a restaurant or for the sale of ice cream, or for use as a motel or motor lodge."

Plaintiffs express apprehension that the language of the quoted paragraph may adversely affect the title to the land owned by plaintiffs but not leased to defendant, to the extent that plaintiffs cannot convey such lands by warranty deed without the question of liability.

The defendant's position is that paragraph 12 imposes a limitation upon the entire tract of land described which is binding upon the respective heirs, successors and assigns of the parties.

The plaintiffs' contention is that paragraph 12 creates only a personal covenant, while the defendant's contention is that the same constitutes a covenant running with the land.

The lease contains the following provision in paragraph 19 —

"The covenants and agreements herein contained shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors and assigns."

It is urged by the plaintiffs that the underlining of the word "knowingly" in paragraph 12 is significant in that it indicates the intention of the parties to limit the provisions of this paragraph to that of a personal covenant rather than one running with the land, which would be an absolute prohibition of the activities mentioned in paragraph 12. On the other hand, it is contended by defendant that the underlining of the word "knowingly" was inserted in order that there would be no doubt that the plaintiffs' intention was that in the event of a sale of the remaining portion of the property described to a third party the plaintiffs would not be liable in any suit for damages should the grantees without the knowledge of the plaintiffs establish a business in competition to that of the defendant, Howard Johnson, Inc., and that such provision is actually one of benefit to the plaintiffs more so than to the defendant.

It is urged by plaintiffs that the use of the clause in paragraph 19 binding the parties, their successors and assigns, cannot have the effect of expanding the meaning of the covenant as expressed in paragraph 12 for the reason that a covenant which is of a personal nature cannot be made to run with the land by the mere use of a clause customarily found in leases which binds successors and assigns. Plaintiffs cite Thompson on Real Property 7, on page 113, section 3624 — "Though a covenant be made by one for himself and his assigns, yet, if it does not concern the land, his assignee is not bound by it."

This view is supported by 8 Florida Jurisprudence 504, citing as authority Jackson v. Aripeka Sawmills (Fla.), 43 So. 601, with the following language — "Furthermore, where the thing covenanted to be done is merely collateral to the land conveyed and does not touch or concern it or affect the quality, value, use or enjoyment of such land, such covenant is personal."

The defendant contends that the controlling principle in this case may be found in Janet Realty Corp. v. Hoffman's, Inc. (Fla.), 17 So. 2d 114, which quotes Williston on Contracts, vol. 5, Rev. Ed., par. 1642, pp. 4602-4606 —

Sale or Lease of Property with Restrictive Covenant, — The seller or lessor of property as distinguished from a business or good will may by a restrictive promise reasonably limited agree to refrain from himself engaging in a business or from disposing of his property in such a way that others can engage in a business which would impair the value of the property to the buyer for the purpose for which he intended to use it, or from selling other property remaining in his hands at a price which would depreciate the value of the buyer's purchase. Similarly, a buyer may make a reasonable contract restricting himself from using the property which he has bought in a way which would compete with the

seller, or be obnoxious to him. Restriction upon the use of real property for stated purposes is considered less likely to affect public interest than restraint of the activities of individuals, and accordingly such covenants are usually held not contrary to public policy. The seller of real estate may reserve an easement or he may bind the buyer by a contract, which will not create an easement in the land, to refrain from using his ownership in certain ways; as, for instance in selling intoxicating liquors. The grantor may stipulate that the land shall not be occupied by certain social groups or that it shall be used only as a residence.

The only limits imposed by the law on the owner of property restricting his power to exact contracts from a subsequent purchaser to refrain from using the property in a certain way are those imposed by public policy, and though public policy forbids unreasonable restraint of trade, and therefore forbids a system of contracts attempting to control prices on re-sale, there seems no reason why it should prohibit contracts which reasonably protect a business of either buyer or seller without tending to affect the public injuriously by monopoly or enhancement of prices.

The plaintiffs urge that the above principle is not in point for the reason that the issue in the Janet Realty case was whether or not the written agreement between the parties there was void as being contrary to public policy.

In the opinion of the court, the language employed by the parties in paragraph 12, wherein the lessors covenanted that until the lessee should consent in writing the lessors would not at any time during the term of the lease knowingly permit any part of the described property owned by the lessors to be used for a restaurant or motel or for the sale of ice cream, is clear and unambiguous — such language was designed to protect the defendant, whose principal business is the operation of restaurants and motels and the sale of ice cream, from competition in that particular area.

The language used in paragraph 12 evinces, in the opinion of the court, a plain and unequivocal intent on the part of the plaintiffs and the defendant to —

1.  Secure defendant against competition from others who might lease or purchase land in the same tract.

2.  Secure plaintiffs against future lawsuits for violation of the lease agreement by inserting the word "knowingly."

3.  Create a covenant running with the land by the use of the words in paragraph 19 — "heirs, successors and assigns."

It does not appear that the covenant here, in the words of Florida Jurisprudence, supra, is "merely collateral to the land conveyed," but on the contrary definitely does "touch or concern

it" — it directly affects the "quality, value, use or enjoyment of such land."

It is the further opinion of the court that the rule expressed in the Janet Realty case, supra, is applicable and controlling.

The intent of the parties being to establish a covenant running with the land and such covenant being one not contrary to public policy, and hence enforceable in Florida, the question submitted must be determined adversely to the contentions of the plaintiffs.

An appropriate decree may be prepared from this opinion.